MICHAEL STEPANIAN
Attorney at Law (CSBN 037712)
819 Eddy Street
San Francisco, CA 94109
Telephone: (415) 771-6174
Facsimile:   (415) 474-3748

RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
2831 Telegraph Avenue
Oakland, CA 94609
Telephone: (510) 763-9967
Facsimile:   (510) 272-0711

Attorneys for Defendant Shannon Blaylock

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

–ooo–

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     vs.<br><br>SHANNON BLAYLOCK, et al.,<br><br>          Defendant | No. CR 07-0454 PJH<br><br>**DEFENDANT SHANNON BLAYLOCK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE OR LIMIT THE INTRODUCTION OF EVIDENCE OF OTHER BAD ACTS; DECLARATION OF COUNSEL IN SUPPORT**<br><br>Trial:          September 15, 2008 |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

At the pre-trial conference held in this matter, this Honorable Court instructed the Government to identify the evidence it intends to introduce against defendant Shannon Blaylock pursuant to Rule 404(b) of the Federal Rules of Evidence. The Government has complied with this order and identified 14 groups of statements it intends to proffer at trial through mainly one witness, previous co-defendant and now Government witness, Tawakoni Seaton, in its Notice of Intent to Use Evidence of Other Crimes filed on September 2, 2008.

1   Thereafter, on the evening of Friday, September 5, 2008, the Government filed its Supplement to Notice of Intent to Use Evidence of Other Crimes outlining five additional groups of statements it intends to elicit from Tawakoni Seaton. Counsel spent the following days analyzing the information in the Notice and reviewing it with our client. Before counsel had an opportunity to file a reply to the government's two notices this Court issued an Order granting the government Rule 404 motion. Notwithstanding the Court's Order, counsel respectfully urge this Court to consider this reply as it bears on the government's notices. [1]

Defendant seeks to exclude or limit the testimonial evidence the Government has identified in its submissions for the reasons set forth herein. Put simply, because there is no dispute that defendant engaged in sex trafficking of adults, the evidence the Government seeks to introduce does not prove a material point. In addition, it is cumulative once it is established that defendant is a "pimp." Furthermore, most of what the Government proffers is simply intended to inflame the jury against defendant because it seeks to introduce evidence of violence between Blaylock and Seaton under the guise of "trafficking." The evidence concerning sex trafficking of minors is, in one case, demonstrably false, and in the other case is overwhelmingly unreliable, constitutes double-hearsay and violates defendant's Confrontation Clause rights. Finally, much of this evidence is more prejudicial than probative.

## II.   DISCUSSION

**A.   The Conduct Sought to Be Proven in Other Acts Exceeds the Limits Set for Purposes for Which Evidence of Other Crimes, Wrongs, or Acts May Be Admitted.**

The Government has identified nineteen groups of statements of expected testimony of other act evidence, eighteen of which will be presented through co-defendant and cooperating Government witness, Tawakoni Seaton. The other witness, Antonio Williams, will purportedly testify that in March 2007, defendant Shannon Blaylock asked him if he (Williams) wanted to make money pimping girls and

---

[1] The Court never gave counsel a deadline date to file a reply to the government's notice. This reply is being filed as expeditiously as possible. This motion was prepared on September 8th but Mr. Stepanian could not have a meeting with Mr. Blaylock until the morning of September 9th when he reviewed the 404b Notice with him. . Both counsel met with the government for approximately three hours on the afternoon of September 9th in order to resolve trial stipulations. We advised the government during our meeting that we would be filing a reply to the 404b Notice and the Co-Conspirator Notice. Once we returned to our office to finalize the pleadings, the Court had already filed its Order.

asked him to ask his girlfriend if her friends were interested in working for the defendant. Like many of the statements the Government seeks to proffer through Tawakoni Seaton, Williams' testimony does not constitute "other act" evidence because it does not tend to prove a material point – there is no dispute that defendant is and was a "pimp" – and the purported "other act" evidence is not similar to the offense charged.

Defendant Blaylock is charged with sex trafficking of a child in violation of Section 1591 of Title 18 of the United States Code and conspired to do same in violation of Section 371 of Title 18 of the United States Code. He is not charged with sex trafficking of adults.

In the Ninth Circuit, evidence of "other acts" may not be admitted to prove character, but may be admitted for other purposes, such as to show knowledge or intent. See Fed.R.Evid. 404(b); United States v.. Basinger, 60 F.3d 1400, 1407-08 (9th Cir.1995). Here, the knowledge issue in question is defendant's knowledge of the age of one particular person. Such "other acts" may be admitted under Rule 404(b) if: (1) the evidence tends to prove a material point; (2) it is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge is at issue) the act is similar to the offense charged. United States v. Vizcarra-Martinez, 66 F.3d 1006, 1013 (9th Cir. 1995); United States v. Mayans, 17 F.3d 1174, 1181 (9th Cir.1994).

**1.  Williams and Seaton's Proffered Testimony Regarding Sex Trafficking of Adult Women in General, and Violence in Particular, Does Not Tend to Prove a Material Point**

The Government bears the burden of showing that the "other act" evidence proves a material element of the offense for which the defendant is now charged. See, *e.g.*, Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993). All nineteen groups of statements the Government identified in its Notice and Supplement to Notice of Intent to Use Evidence of Other Crimes deals with various aspects of sex trafficking in general (transporting, directing sex trafficking and accepting money) and the use of violence by defendant Blaylock. With two notable exceptions (addressed in more detail, *infra*), the proffered evidence is not relevant to any material dispute at trial.

Defendant does not dispute that he has engaged in the past involving transactions surrounding the sex trafficking of *adult* women. Yet, the crime with which he is charged requires the Government

1  to prove sex trafficking of a person "knowing that the person had not attained the age of 18." 18 U.S.C.
2  section 1591. Thus, such evidence does not tend to prove a material point.

3  Without any authority, the Government seeks to disengage and disregard the knowledge
4  requirement in 18 U.S.C. section 1591 from the enterprise features (recruit, entice, harbor, transport,
5  provide, or obtain by any means) and the financial benefit features ("benefit, financially or by receiving
6  anything of value") of the crime charged in order to demonstrate that general "pimping" activities are
7  similar to sex trafficking of a minor. These features of the statute are written in the conjunctive,
8  demonstrating that each of the features are to be considered together, with the *mens rea* element –
9  "knowing" – required for the enterprise features and the age factor.

10  Thus, once the Government establishes that defendant is a "pimp," the transactions surrounding
11  the sex trafficking of *adult* women no longer prove a material point. Indeed, once the jury learns
12  defendant has engaged in sex trafficking of *adult* women, the "other act" evidence the Government seeks
13  to introduce no longer demonstrates motive, opportunity, intent, preparation, plan, knowledge, identity,
14  or absence of mistake or accident in to engage in general sex trafficking as a pimp. Clearly, the general
15  pimping conduct does not tend to prove the defendant's knowledge that the person who engaged in
16  commercial sex acts had not attained the age of 18 years.

17  Furthermore, the "other act" evidence concerning the use of violence by defendant Blaylock is
18  not material because the indictment does not allege "coercion," another part of 18 U.S.C. section 1591
19  which the Government purposefully chose not to introduce to the grand jury to indict him. Thus, these
20  incidents cannot be introduced under Rule 404(b).

21  **2.   Williams and Seaton's Proffered Testimony Regarding Sex Trafficking of Adult Women in General, and Violence in Particular, Is Not Similar to the Offense Charged**

23  Evidence of other sex trafficking conduct involving the defendant is not similar to the offense
24  charged because of the simple fact that he is charged with child sex trafficking. The Government's
25  memorandum of points and authorities relies on a case which, unwittingly, demonstrates the impropriety
26  of using the proffered "other act" evidence in this case. In setting forth its 404(b) analysis, the
27  Government cites United States v. Johnson 132 F.3d 1279, 1281-82 (9th Cir. 1997) to support its
28  contention that "other act" evidence of sex trafficking of adults is similar to child sex trafficking. United

1  States v. Johnson, does not stand for such a proposition.

4  As the Government points out, in United States v. Johnson, *supra,* the defendant was charged and convicted of transportation of a minor for with intent to engage in criminal sexual conduct, in violation of Title 18, United States Code, section 2423(a). At trial, the Government sought to introduce evidence that the defendant had attempted to engage in sexual conduct *with other minors* thirteen years earlier. The Ninth Circuit upheld the trial court's decision to allow the evidence because, as is evident, the "other act" evidence was sufficiently similar because the defendant's *past sexual conduct with minors* demonstrated intent to engage in sexual conduct in the charged offense. United States v. Johnson, *supra,* 132 F.3d at 1281-82 [emphasis supplied].

Here, there is no such similarity. With the exception to two identified groups of statements (Nos. 6 and 7), none of the groups of statements remotely involves minors. The two that purport to address sex trafficking of minors (Nos. 6 and 7), are unreliable for reasons set forth below.

The Government's reliance on United States v. Johnson, *supra,* to support its 404(b) analysis is also flawed because the *mens rea* elements of Title 18, United States Code, section 2423(a), and Title 18, United States Code, section 1591 are fundamentally different. Unlike Section 1591 of Title 18 of the United States Code (which defendant Blaylock is charged), knowledge of the victim's age is not an element of the crime of violating Title 18, United States Code, section 2423(a).[2] See United States v. Taylor, 239 F.3d 994, 997 (9th Cir. 2001). Put simply, United States v. Johnson, *supra,* supports defendant's contention that the "other act" evidence of sex trafficking of adults is not similar to sex trafficking of minors.

**3. Seaton's Proffered Testimony Regarding Sex Trafficking of Other Minors Is Not Sufficient to Support a Finding That the Defendant Committed the Other Acts**

In Category No. 6, the Government proffers the following statements by Tawakoni Seaton:

Seaton advised Blaylock that she believed "Tuesday" was underage; and that in response,

---

[2] 18 U.S.C. § 2423(a), forbids *knowingly transporting* a minor in interstate or foreign commerce with the intent that the minor engage in prostitution. See U.S. v. Byun __ F.3d __, 2008 WL 3487432, *6 fn. 10 (9th Cir. August 14, 2008) [emphasis supplied].

> Blaylock said that Seaton was jealous and accused Seaton of not liking the other "girls." Thereafter, Blaylock asked "Tuesday" to bring him an identification card.

This testimony is offered to prove that Blaylock knowingly engaged in sex trafficking of another minor, "Tuesday, " for one of the permitted purposes under Rule 404(b). There is nothing in the proffer which makes it sufficient to support a finding that Blaylock knew that "Tuesday" was a minor. Furthermore, based on discovery the Government produced, the statement that "Tuesday" was a minor is demonstrably false.

Indeed, it does not appear that the Government will produce the person identified as "Tuesday" to testify at trial. Seaton's unsupported "belief" that "Tuesday" was underage is inherently unreliable – there is nothing indicating that she had any personal knowledge of "Tuesday's" actual age to support her "belief." In the FBI 302 reports recently produced by the Government, Seaton told the Government that she "at first questioned 'Tuesday's' age and believed she was underage." Yet, she did not state that she asked "Tuesday" her age nor that she confirmed that "Tuesday" was underage. In fact, in the FBI 302, Seaton told the Government that she verified with "Tuesday's" sister that "Tuesday" was **not** a minor.

Thus, there is no foundation to Seaton's "belief" that "Tuesday" was a minor because such belief is contrary to facts she told the Government she found to exist. Further, the testimony the Government will seek to elicit from Seaton that Blaylock asked "Tuesday" to bring him an identification card does not constitute "other act" evidence since the foundation for the predicate is missing. The Government simply seeks to introduce impermissible character evidence against defendant Blaylock by soliciting a misleading lay opinion of a cooperating witness about her unsubstantiated "belief" concerning the age of a person who the jury will not hear from and who was not a minor.

In Category No. 7, the Government proffers the following statements by Tawakoni Seaton:

> When Seaton met "Pooh," Seaton asked "Pooh" about her age believing and later learning that she was a minor. Blaylock later procured a false Texas identification card for "Pooh" that showed that she was 18 years old.

The proffer the Government makes is insufficient to determine where Seaton "later learned" that "Pooh" was a minor. Furthermore, the proffer that Seaton will testify that Blaylock later procured a false Texas identification card for "Pooh" that showed she was 18 years old is not necessarily relevant, and is certainly prejudicial, without establishing that Blaylock knew "Pooh" was a minor.

In the FBI 302, Seaton told the Government that she "questioned Pooh about her age and Pooh went and told Blaylock about it." She later told the Government that "Pooh" told her that she was 17 and that Blaylock told her to tell Seaton that she was 18. These statements in the FBI 302 reflect serious hearsay problems in establishing Blaylock knew "Pooh" was a minor. They also implicate Blaylock's Confrontation Clause rights. The defense does not anticipate that the Government will produce "Pooh" as a witness at trial.

Seaton's anticipated testimony relies on hearsay because she recounts an out-of-court statement by an unknown person (both "Pooh" and "McKayla" are aliases used by this person according to Seaton) offered to prove the truth of the matter asserted – that "Pooh" was underage. Hearsay evidence is not admissible unless an exception for its admission exists. See Fed.R.Evid. 802. No such exception exists and it is particularly unreliable given the fact that it comes from an unknown person using at least two aliases.

Were the Government to attempt to elicit the statements Seaton provided in the FBI 302, the portion of the statement that Blaylock told "Pooh" to tell Seaton she was eighteen is double-hearsay. "Double hearsay" is hearsay that contains hearsay. See Shell v. Parrish, 448 F.2d 528, 533 (6th Cir.1971). "Double hearsay" is inadmissible unless an exception exists for each separate level of hearsay. See Fed.R.Evid. 805; see also Miller v. Field, 35 F.3d 1088, 1090 (6th Cir.1994); Shell, 448 F.2d at 533.

The first statement, that Blaylock told "Pooh" to tell Seaton she was eighteen, is not an admission of a party. It is a hearsay statement by an unavailable witness. It certainly is not conclusively self-inculpatory – there is no evidence that Blaylock knew "Pooh" was a minor or if she is, in fact, a minor. See United States v. Ortega, 203 F.3d 675, 682 (9th Cir.2000) [non-self-inculpatory statements are inadmissible hearsay]. Indeed, since there is no evidence that "Pooh" is a minor other than the hearsay statement of Seaton, the purported statement by defendant Blaylock to "Pooh" could very well be considered exculpatory. At best, its ambiguous.

It has long been established that an admission of a party requires some independent corroborating evidence in order to serve as the basis for a conviction. See Opper v. United States, 348 U.S. 84, 89, 75 S.Ct. 158, 162, 99 L.Ed. 101 (1954); Warszower v. United States, 312 U.S. 342, 345 n. 2, 61 S.Ct. 603, 606 n. 2, 85 L.Ed. 876 (1941). There is no such corroborating evidence here.

Thus, this purported statement by "Pooh," as the declarant who is unavailable, does not constitute a statement against pecuniary interest pursuant to Rule of Evidence 804(b)(3) because it is far from clear that the statement is contrary to her interests. there is no corroborating circumstances clearly indicating the trustworthiness of the statement.[3] In Williamson v. United States, 512 U.S. 594, 600-01 (1994), the Supreme Court explained that Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." All the Government has to corroborate the statement is Seaton.

To the extent the statement is exculpatory to Blaylock, it remains untrustworthy for the obvious reason that "Pooh" is unavailable and not subject to evaluation by the jury nor subject to cross-examination. Indeed, the source of the double-hearsay is from Seaton, a cooperating witness being provided favorable treatment by the Government for her testimony. Further, the fact that the Government has identified a proffer of testimony through Seaton that would be extremely misleading – as amply demonstrated above regarding Seaton's unfounded and false "belief" of "Tuesday's" age – renders the statement particularly untrustworthy.

The second part of the statement, *i.e.,* what "Pooh" told Seaton about what Blaylock purportedly told her, is offered to prove the truth of the matter stated and is also hearsay without any identifiable exception. Thus, assuming, *arguendo,* the Government could overcome the hearsay objection to the first part of the statement, the Government has not identified an exception to the second part of the statement.

In addition, the statement violates defendant Blaylock's Confrontation Clause rights. In United States v. Boone, 229 F.3d 1231 (9th Cir.2000), *cert. denied,* 532 U.S. 1013, 121 S.Ct. 1747, 149 L.Ed.2d 669 (2001), an accomplice confided to his girlfriend that he and Boone had together committed an armed robbery. The girlfriend surreptitiously tape-recorded the conversation for the police. The court held the admission of the nontestifying accomplice's statement under the statement against penal interest exception to the hearsay rule did not violate Boone's Confrontation Clause rights. Boone, 229 F.3d at 1234. Looking at the circumstances as the accomplice perceived them, the court found the circumstances

---

[3] A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. FRE 804(b)(3)

surrounding the statement made it inherently trustworthy. Id.

The same cannot be said here. There is no tape recorded statement. The Government will not produce "Pooh" for cross-examination and her identity and background is unknown. Thus, this Court cannot adequately consider the circumstances under which the purported statement was made to determine whether it possessed particularized guarantees of trustworthiness. See Padilla v. Terhune, 309 F.3d 614, 620 (9th Cir. 2002). Moreover, the corroborating source, Seaton, is inherently untrustworthy given her status as a cooperating witness and where there exists a strong incentive for her to shift blame. Allowing the Government to elicit the statement by Seaton would violate defendant's Confrontation Clause rights.

**B.    The Government's Identified "Other Act" Evidence Should Be Excluded as the Prejudice Resulting from Them Outweighs Their Probative Value.**

After determining whether the "other act" evidence meets the four factors identified in United States v. Vizcarra-Martinez, *supra,* 66 F.3d at 1013 and United States v. Mayans, *supra,* 17 F.3d at 1181, it is then subject to Fed.R.Evid. 403, which requires the probative value outweigh its prejudicial effects. See United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400-02 (9th Cir.1991). Rule 403 of the Federal Rules of Evidence provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice (or) confusion of the issues." This balancing is mandated under the Ninth Circuit's 404(b) analysis: Once the aforementioned prerequisites have been satisfied, the evidence is admissible for those purposes permitted by Rule 404(b) if the court determines that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. United States v. Federico, 658 F.2d 1337 (9th Cir. 1981).

In balancing the probative value of evidence against the danger of unfair prejudice, the trial court should also consider the need for such evidence to prove a particular point. United States v. Lawrance, 480 F.2d 688, 691-92 n.6 (5th Cir. 1973); C. McCormick, *McCormick's Handbook of The Law of Evidence* § 190 at 453 (2d ed. 1972). The probative value of evidence must be measured by its "tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Thus, the evidence should not be admitted unless there is

an identifiable need for it.

As stated above, once the jury determines that defendant operated as a pimp, the repeated testimony by Seaton concerning general pimping activities is no longer relevant because there remains no materiality to the evidence demonstrating the fact that defendant is a pimp. Indeed, it becomes cumulative quite quickly. While Rule 404(b) is a rule of inclusion which references categories of other "acts" encompassing the inner workings of the mind: motive, intent, and knowledge – once it has been established that the evidence offered serves one of these purposes the conditions justifying the exclusion of the evidence are those described in Rule 403: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. United States v. Curtin, 489 F.3d 935, 944 (9th Cir.2007) (*en banc*). Put simply, the Government does not require nineteen separate groups of statements to make the point that defendant was a pimp.

This "other act" evidence concerning violence between Seaton and Blaylock serves no appropriate purpose other than to inflame the jury's sentiments regarding the defendant's character. It is simply offered to prejudice defendant Blaylock in the eyes of the jury. The court has repeatedly reaffirmed the principle that such extrinsic act evidence is not looked upon with favor, as it raises substantial concerns that a person may be convicted not for what he did, but for who he is. United States v. Bradley, 5 F.3d 1317, 1320 (9th Cir. 1993). In other words, Rule 404(b) does not authorize the admission of uncharged acts to establish propensity.

If the government introduces evidence of physical altercations between defendant Blaylock and cooperating witness Tawakoni Seaton, defendant must be permitted to show that these incidents are not as portrayed by Seaton who has a long history of mental illness. Similarly, if the Government is allowed to introduce cumulative evidence of general sex trafficking transactions other than those which are the subject of the indictment in order to show a pattern of conduct, the defendant must be permitted to show that these incidents and transactions occurred with adults over the age of majority. This would lengthen the trial substantially over matters that become immaterial once it is established that defendant is a pimp.

Additionally defendant is not charged with a violent crime nor any crime involving any other minors. The crimes charged are specific to one particular minor in the indictment. The Court must be

1  extremely careful to guard against the danger that a defendant will be convicted because of proof of other
2  offenses rather than because the government has introduced evidence sufficient to prove beyond a
3  reasonable doubt that the defendant is actually guilty of the offense for which he is being tried.

4  The Ninth Circuit Court of Appeals re-affirmed that other acts evidence is disfavored because "the
5  defendant must be tried for what he did, not for who he (or she) is. Thus guilt or innocence of the
6  accused must be established by evidence relevant to the particular offense being tried, not by showing that
7  the defendant has engaged in other acts of wrongdoing." United States v. Mayans, 17 F. 3d 1174 (9th Cir.
8  1994).

**C. Admission of Uncharged Allegations of Physical Violence and the "Other Act" Evidence Purporting to Show Child Sex Trafficking Would Violate Due Process.**

The Ninth Circuit has ruled that admission of "other acts" evidence solely for the purpose of proving propensity violated Due Process. In Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991), the court held that " [o]nly if there are no permissible inferences the jury may draw from the evidence can its admission violate due process." In McKinney v. Rees, 993 F.2d 1378 (9th Cir. 1993), the court found that where evidence is admitted solely to establish propensity, the Jammal standard is met: Because drawing propensity inferences from "other acts" evidence of character is impermissible under an historically grounded rule of Anglo-American jurisprudence the . . . evidence [in question] meets the strict test we established in Jammal. Id. at 1384. Upon analyzing the facts of the case, the court determined that the admission of this propensity evidence violated Due Process. Id. at 1385; see also Henry v. Estelle, 33 F.3d 1037 (9th Cir. 1993) (evidence of prior child molestation in prosecution for child molestation rendered petitioner's trial fundamentally unfair); United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985) ("Our reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is.")

The admission of incidents involving physical violence is extremely prejudicial and does not prove a material point concerning the crime defendant is charged. Furthermore, admitting the purported "other act" evidence concerning sex trafficking of two other minors (Category Nos. 6 and 7) would violate the defendant's fundamental Due Process right to a fair trial. Thus, this extraneous evidence would

unquestionably present the constitutionally impermissible risk that the jury would convict the defendant based on the presence of character evidence that defendant is violent and engaged in trafficking other minors where such purported evidence is very unreliable if not demonstrably false.  This should not be allowed.

### III.   CONCLUSION

Based upon the foregoing, defendant respectfully requests this honorable Court to enter an order precluding or severely limiting the nineteen groups of statements the Government has identified in its submissions at the trial in this matter.

DATED: September 9, 2008                    Respectfully submitted,


By   /s/ Michael Stepanian
Michael Stepanian
Attorneys for Defendant
Shannon Blaylock

## DECLARATION OF COUNSEL

I, Michael Stepanian, declares as follows:

1. I am an attorney at law duly licensed to practice before all of the courts of this state and this district and I am appointed counsel of record to defendant Shannon Blaylock in this matter. Further, I have personal knowledge of the matters set forth herein and could and would testify thereto if called upon to do so in any court of law.

2. I was recently provided the Federal Bureau of Investigation reports ("302") from the Government concerning co-defendant Tawakoni Seaton in discovery in this case. In the report dated March 24, 2008, which recounts an interview with Ms. Seaton by Special Agents Matthew Beaupain and John Kim, Ms. Seaton states that she questioned the age of a girl with the alias "Tuesday." The Special Agents document the following: "On one occasion SEATON went to drop TUESDAY off at TUESDAY's residence and went inside and met with TUESDAY's family. SEATON verified with TUESDAY's sister that TUESDAY was not a minor." True and correct copies of the relevant pages of the FBI 302 report dated March 24, 2008, by Special Agents Matthew Beaupain and John Kim are attached hereto.

3. It would be prosecutorial misconduct if the Court allows the Government to solicit false testimony from its cooperating witness, Tawakoni Seaton. There cannot be a good faith basis to Ms. Seaton's "belief" that the girl who went by the name of "Tuesday" was a minor given her admission to the Government that she was informed by "Tuesday's sister" that she was **not** a minor.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct of my own personal knowledge. Executed at San Francisco, California, on September 8, 2008.

/s/ Michael Stepanian
Michael Stepanian

FD-302a (Rev. 10-6-95)

31E-SF-141356

Continuation of FD-302 of __TAWAKONI SEATON (**Proffer**)__ , On __3/24/2008__ , Page __9__

pimp. SEATON believed that BLAYLOCK made up his mind and had everything planned out already.

CYNTHIA LNU had left them, and it was back to only BLAYLOCK and SEATON. BLAYLOCK had blamed SEATON for CYNTHIA LNU for leaving. SEATON admitted that she did not like, or treat CYNTHIA LNU very well.

SEATON received a call from DANNY LNU, about another girl, JENNIFER LNU, her street name was GINGER and BRITNEY. SEATON said that JENNIFER LNU was "very ruff around the edges." BLAYLOCK and SEATON met JENNIFER LNU and had her start working for them.

At the time there were two other girls, TAMIKA LNU (aka, PAGE) and TUESDAY, a street name, who were working with them as well. SEATON at first questioned TUESDAY's age and believed that she was underage. SEATON discussed this matter with BLAYLOCK. BLAYLOCK again started blaming SEATON for not liking the other girls and that she was just jealous. BLAYLOCK later asked TUESDAY to bring her identification card but PAGE had told SEATON that it was fake. SEATON believed that BLAYLOCK did not care about the age of the girls.

On one occasion, SEATON went to drop TUESDAY off at TUESDAY's residence and went inside and met with TUESDAY's family. SEATON verified with TUESDAY's sister that TUESDAY was not a minor.

On January of 2006, MARIE LNU (aka, NIKKI), a white girl, called SEATON and asked SEATON for help. NIKKI was leaving her pimp and wanted to start working for SEATON. NIKKI got SEATON's telephone from LANNA LNU, who had once helped SEATON make fake pay slip's so that she could get a mortgage to buy a house. SEATON did not want her kids involved so she sent them to her mother's house in Minnesota. By this time their Internet website, BLAZING EXOTICS, was up and running.

TASHA LNU flew from Los Angeles, to Dallas, to start working with them. TASHA LNU would make comments to SEATON that BLAYLOCK was not treating them right. SEATON and TASHA LNU would get in arguments about BLAYLOCK. BLAYLOCK would only yell at the other girls but had not gotten physical with them yet. TASHA LNU, SEATON, JENNIFIER LNU and BLAYLOCK were all living at SEATON's house together. PAGE and TUESDAY had a place of their own, but would sometimes also stay at SEATON's house.