MICHAEL STEPANIAN
Attorney at Law (CSBN 037712)
819 Eddy Street
San Francisco, CA 94109
Telephone: (415) 771-6174
Facsimile:  (415) 474-3748

RANDY SUE POLLOCK
Attorney at Law (CSBN 64493)
2831 Telegraph Avenue
Oakland, CA 94609
Telephone: (510) 763-9967
Facsimile:  (510) 272-0711

Attorneys for Defendant Shannon Blaylock

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

–ooo–

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-0454 PJH |
| Plaintiff, | **DEFENDANT SHANNON BLAYLOCK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE OR LIMIT THE INTRODUCTION OF CO-DEFENDANT'S STATEMENTS; DECLARATION OF COUNSEL IN SUPPORT** |
| vs. | |
| SHANNON BLAYLOCK, et al., | |
| Defendant | |

Trial:   September 15, 2008

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

At the pre-trial conference held in this matter, this Honorable Court instructed the Government to identify the co-conspirator statements it intends to introduce against defendant Shannon Blaylock pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence. On September 5, 2008, the Government filed its Additional Response to Defendant's Motion to Exclude Co-conspirator's Statements. In that submission, the Government does not identify the actual co-conspirator statements it intends to rely upon. Rather, the Government merely summarizes a few contentions in conclusory terms regarding sex

trafficking. In addition, the Government blurs the line between conduct by defendant Blaylock and the previous co-defendant and now Government witness, Tawakoni Seaton, by making assertions aimed at Blaylock which are, in fact, the produce of Seaton's conduct. Only by reading in context can the defense discern which "defendant" the Government is referring to in its submission.

However, the defense has at its disposal the Government's other submission titled Notice of Intent to Use Evidence of Other Crimes filed on September 2, 2008, and the FBI 302 reports produced in discovery which reflect in greater detail the possible statements the Government seems to avoid specifying. As demonstrated below, the Government cannot meet the requirements of showing, by a preponderance of evidence, the well-established elements that are required before Seaton's co-conspirator's statements may be admitted.[1]

## II.     DISCUSSION

**A.   The Government's Submissions Fail to Demonstrate the Actual "Statements" it Intends to Proffer Nor the Requisite Elements for Their Admissibility**

A co-conspirator's statement is admissible under Fed. R. Evid. 801(d)(2)(E) to show a defendants participation in a conspiracy. United States v. Peralta, 941 F.2d 1003, 1007 (9th Cir. 1991). However, [b]efore admitting a statement of a co-conspirator into evidence against a defendant, the court must have independent evidence of the existence of the conspiracy and of the defendant's connection to it, and must conclude that the statement was made both during and in furtherance of the conspiracy. United States v. Layton, 720 F.2d 548, 555 (9th Cir. 1983); and Peralta, 941 F.2d at 1007.

Here, the Government has made the following proffer: "The evidence will show that there was a conspiracy between Tawakoni Seaton (Seaton) to act as a prostitute for and assistant to defendant acting as pimp for her and other prostitutes, some of whom were less than 18 years of age since at least August of 2005." For some inexplicable reason, the Government does not identify the statements Seaton is expected to make. Rather, the Government makes generalized conclusions of fact without identifying the actual statements.

---

[1] See counsel's footnote in their Reply to the government's FRE 404B motion regarding the delay in filing this reply.

1       Furthermore, rather than focus the independent evidence of the existence of the conspiracy charged in the indictment (conspiracy to engage in child sex trafficking), the Government identifies the existence of a conspiracy to engage in general sex trafficking, sweeping in as an afterthought the core *mens rea* the Government must prove: defendant's agreement with Seaton to engage in child sex trafficking.

      In what can only be described as a tacit acknowledgment by the Government of the misleading nature of the testimony it may seek to elicit from its cooperating witness Seaton, the Government makes the following proffer: "In 2005 the defendant recruited to prostitute for him a female, Tuesday, *without regard to the possibility* she was a minor.[2]" As set forth in the Government's Notice of Intent to Use Evidence of Other Crimes filed on September 2, 2008, the Government claimed that Seaton would testify that she advised Blaylock that she believed "Tuesday" was underage; and that in response, Blaylock said that Seaton was jealous and accused Seaton of not liking the other "girls." Thereafter, Blaylock asked "Tuesday" to bring him an identification card. (No. 6 in U.S.'s Notice of Intent to Use Evidence of Other Crimes.)

      Unfortunately, in its Notice of Intent to Use Evidence of Other Crimes, the Government overlooked contrary evidence contained in the discovery it produced to the defense a few weeks ago. In the FBI 302 reports recently produced by the Government, Seaton told the Government that she "at first questioned 'Tuesday's' age and believed she was underage." Yet, she did not state that she asked "Tuesday" her age nor that she confirmed that "Tuesday" was underage. In fact, in the FBI 302, Seaton told the Government that she verified with "Tuesday's" sister that "Tuesday" was **not** a minor. Thus, there is no foundation to Seaton's "belief" that "Tuesday" was a minor because such belief is contrary to facts she told the Government she found to exist.

      Similarly, the Government contends that it can prove that in 2006, Seaton recruited to prostitute for Blaylock another female, Pooh, with full knowledge she was under 18. However, in its Notice of Intent to Use Evidence of Other Crimes, the Government claimed that Seaton would testify that when

---

[2]   The phraseology of this passage in the Government's submission is quite odd indeed. It appears that the Government knows that Seaton ultimately corroborated that Tuesday was not a minor. This can only explain the tepid manner in which it describes Seaton's proffer.

*UNITED STATES OF AMERICA v. BLAYLOCK*       No. CR 07-0454 PJH
DEFENDANT SHANNON BLAYLOCK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION IN LIMINE TO EXCLUDE OR LIMIT THE INTRODUCTION OF CO-DEFENDANT'S STATEMENTS    3

1 she met "Pooh," Seaton asked "Pooh" about her age believing and later learning that she was a minor. The Government also contended that Seaton would testify that Blaylock later procured a false Texas identification card for "Pooh" that showed that she was 18 years old.

Yet, in the FBI 302 produced in discovery, Seaton told the Government that she "questioned Pooh about her age and Pooh went and told Blaylock about it." She later told the Government that "Pooh" told her that she was 17 and that Blaylock told her to tell Seaton that she was 18. These statements in the FBI 302 do not establish Blaylock knew that "Pooh" was a minor. They are hearsay statements of "Pooh," not co-conspirator statements by Seaton. Thus, the statements also implicate Blaylock's Confrontation Clause rights (see *infra.*). The defense does not anticipate that the Government will produce "Pooh" as a witness at trial.

Finally, the Government contends that it can prove that "in February of 2007, the defendant recruited a 17-year old female, V.S., with full knowledge that she was a minor to act as a prostitute." Yet, it is unclear whether the Government is referring to Blaylock or Seaton as "the defendant." In the FBI 302 produced in discovery, Seaton is the person engaged in recruiting "V.S." The Government fails to identify any statement by Seaton as a co-conspirator in its submission with regard to sex trafficking "V.S."

As a consequence, the Government cannot prove the three essential elements by a preponderance of the evidence that it is required to do before it may solicit statements from Seaton: (1) the existence of a conspiracy; (2) the declarant and the "nonoffering party" [defendant] are involved in the conspiracy; and, (3) the statements are made during the course and in furtherance of the conspiracy. Bourjaily v. United States, 107 S. Ct. 2775, 2778 (1987).

Although a pretrial evidentiary hearing is not mandated, such hearing is requested here because of what appears to be the Government's obfuscation of the actual statements it intends to offer by Seaton as a co-conspirator. In addition, based upon the analysis set forth below, it appears possible that the Government may solicit false testimony from the cooperating witness, Seaton. Without a pre-trial submission of the actual statements the Government intends to offer through Seaton and a hearing on the admissibility of what the defense anticipates the Government may attempt, the risk of a mistrial is great.

Furthermore, the Government's attempt to introduce hearsay and double-hearsay statements and in the process violate defendant's Confrontation Clause rights renders a pretrial evidentiary hearing well-advised. See, United States v. James, 590 F.2d 575 (5th Cir. 1979) (suggesting that a pre-trial determination is appropriate).

**1.    The Government's Submissions Do Not Identify "Statements" Nor Prove the Existence of a Conspiracy to Engage in Child Sex Trafficking.**

The defense submits that the pleading filed by the Government entitled "Additional Response to Defendant's Motion to Exclude Co-conspirator's Statements" does not contain the actual statements it intends to offer at trial. FRE Rule 801(a) defines a statement as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." Nothing in the Government's Additional Response to Defendant's Motion to Exclude Co-conspirator's Statements meets this definition.

To prove conspiracy the Government must show (1) an agreement to accomplish an illegal objective, (2) one or more overt acts in furtherance of the illegal objective, and (3) the required intent to carry out the substantive offense. United States v. Schmidt, 947 F.2d 362, 367 (9th Cir. 1991); United States v. Penagos, 823 F.2d 346, 348 (9th Cir. 1987); and, United States v. Melchor-Lopez, 627 F.2d 886, 890 (9th Cir. 1980). There need not be direct evidence of an agreement, circumstantial evidence may suffice to show the existence of an agreement.

Inferences of an agreement may be made "if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." Melchor-Lopez, 627 F.2d at 890-891. It is not necessary that all of the specifics be worked out to prove an agreement. United States v. Pemberton, 730 F.2d 730, 733 (9th Cir. 1988). There must be some independent evidence of a conspiracy, in addition to the statements, before co-conspirators statements can be admitted. United States v. Tamez, 941 F.2d 770, 775 (9th Cir. 1991); and, United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir. 1988).

**a.    The Statements Contained in the Government's Other Submission and the Discovery Produced by the Government Concerning "Tuesday" Do Not Prove the Existence of a Conspiracy to Engage in Child Sex Trafficking**

*UNITED STATES OF AMERICA v. BLAYLOCK*                                                                                                      No. CR 07-0454 PJH
DEFENDANT SHANNON BLAYLOCK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION IN LIMINE TO EXCLUDE OR  LIMIT THE INTRODUCTION OF CO-DEFENDANT'S STATEMENTS        5

1    In its Notice of Intent to Use Evidence of Other Crimes filed on September 2, 2008, the Government contends that Seaton would testify that she advised Blaylock that she believed "Tuesday" was underage; and that in response, Blaylock said that Seaton was jealous and accused Seaton of not liking the other "girls." This exchange does not show an agreement to accomplish an illegal objective. Nor does it show an overt act in furtherance of the illegal objective. Rather, it demonstrates the opposite – that Blaylock dismissed Seaton's statements as that of an unstable and jealous business associate. Indeed, Seaton's statement of Blaylock's reaction reveals a lack of intent to carry out the substantive offense of child sex trafficking.

The demonstrable fact that Seaton's belief that "Tuesday" was a minor was unfounded renders the entirety of the statements attributable to Seaton unreliable and the Government cannot sustain its burden as a result. Indeed, the fact that Seaton admitted to the Government that she corroborated that "Tuesday" was not a minor makes the statement not part of the illegal objective to engage in child sex trafficking, nor an overt act in furtherance thereof, nor an intent to do so.

The other testimony the Government will seek to elicit from Seaton, that Blaylock asked "Tuesday" to bring him an identification card, does not assist the Government in meeting its burden of proving the aforementioned essential elements by a preponderance of the evidence that it is required to do before admitting said statement. Put simply, Blaylock's purported statement that he asked "Tuesday" to bring him an identification card under the circumstances (*i.e.,* that Tuesday was not a minor) renders this purported statement exculpatory and it is not evidence to support the existence of a conspiracy to engage in child sex trafficking.

        **b.**        **The Statements Contained in the Government's Other Submission and the Discovery Produced by the Government Concerning "Pooh" Do Not Prove the Existence of a Conspiracy to Engage in Child Sex Trafficking**

In its submission, the Government claims that it can prove that in 2006, Seaton recruited to prostitute for Blaylock another female, Pooh, with full knowledge she was under 18. The fact that the Government has failed to identify the actual statements Seaton would make in this regard despite being ordered to do so by this Court, is remarkable.

1    However, in its Notice of Intent to Use Evidence of Other Crimes, the Government claimed that Seaton would testify that when she met "Pooh," Seaton asked "Pooh" about her age believing and later learning that she was a minor. The Government also contended that Seaton would testify that Blaylock later procured a false Texas identification card for "Pooh" that showed that she was 18 years old. Unfortunately, the Government glosses over the analysis required to demonstrate that these statements can be admitted.

These two statements are woefully inadequate to establish, by a preponderance of evidence, that an agreement to accomplish an illegal objective was made, that one or more overt acts in furtherance of the illegal objective was accomplished, and that the required intent to carry out the substantive offense exists. Indeed, there is simply no statement which establishes that defendant Blaylock knew "Pooh" was a minor.

Seaton's anticipated testimony does not establish an agreement. Rather, it only establishes that Seaton knew the age of "Pooh." Thus, it does not constitute a co-conspirator statement for purposes of Rule 801(d)(2)(E).

Furthermore, Seaton relies on hearsay because she recounts an out-of-court statement by an unknown person (both "Pooh" and "McKayla" are aliases used by this person according to Seaton) offered to prove the truth of the matter asserted – that "Pooh" was underage. This hearsay demonstrates a lack of connection between Seaton and Pooh's purported conversation with defendant Blaylock. By Seaton's own admission, he is not present during this exchange. The statement does not establish an agreement by Blaylock to engage in a conspiracy to engage in child sex trafficking.

The second statement, that Seaton would testify that Blaylock later procured a false Texas identification card for "Pooh" that showed that she was 18 years old, also does not establish an agreement by Blaylock to engage in a conspiracy to engage in child sex trafficking. Because there is no nexus established by Seaton between her knowledge of "Pooh's" age and Blaylock's, no agreement can be established.

Were the Government to attempt to elicit the statements Seaton provided in the FBI 302, the portion of the statement that Blaylock told "Pooh" to tell Seaton she was eighteen comes from "Pooh,"

---

*UNITED STATES OF AMERICA v. BLAYLOCK* No. CR 07-0454 PJH
DEFENDANT SHANNON BLAYLOCK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION IN LIMINE TO EXCLUDE OR LIMIT THE INTRODUCTION OF CO-DEFENDANT'S STATEMENTS     7

1  not Seaton. The fact that the declarant of this statement is "Pooh" and not Seaton, the co-conspirator
2  hearsay exception does not apply because "Pooh" is not a co-conspirator. Thus, the statement does not
3  fall within the ambit of Rule 801(d)(2)(E).

4  Therefore, defendant's Confrontation Clause rights are indeed implicated. *Cf.*, United States v.
5  Allen, 425 F.3d 1231, 1234-1235 (9th Cir. 2005); Israel v. Quinn, NO. C05 1714 TSZ, 2006 WL
6  3834003, *9-10 (W.D.Wash. Nov. 17, 2006) [Because at the time co-conspirator statements are made,
7  the declarant does not have a reasonable expectation that the statement will be used in court, such
8  statements are not considered testimonial within the meaning of Crawford v. Washington, 541 U.S. 36
9  (2004), and their introduction does not violate the Confrontation Clause].)  Here, "Pooh's" statements
10 are testimonial because she is not a co-conspirator.

11 This statement, that Blaylock told "Pooh" to tell Seaton she was eighteen, is double-hearsay.
12 "Double hearsay" is hearsay that contains hearsay. See Shell v. Parrish, 448 F.2d 528, 533 (6th Cir.1971).
13 "Double hearsay" is inadmissible unless an exception exists for each separate level of hearsay. See
14 Fed.R.Evid. 805; see also Miller v. Field, 35 F.3d 1088, 1090 (6th Cir.1994); Shell, 448 F.2d at 533.

15 The first statement, that Blaylock told "Pooh" to tell Seaton she was eighteen, is not an admission
16 of a party. It is a hearsay statement by an unavailable witness. It certainly is not conclusively
17 self-inculpatory – there is no evidence that Blaylock knew "Pooh" was a minor or if she is, in fact, a
18 minor. See United States v. Ortega, 203 F.3d 675, 682 (9th Cir.2000) [non-self-inculpatory statements
19 are inadmissible hearsay]. Indeed, since there is no evidence that "Pooh" is a minor other than the
20 hearsay statement of Seaton, the purported statement by defendant Blaylock to "Pooh" could very well
21 be considered exculpatory. At best, its ambiguous.

22 As set forth above, the fact that the declarant of this out-of-court statement is "Pooh" who is not
23 a co-conspirator, the analysis regarding its admissibility pursuant to Rule 801(d)(2)(E) should end there.
24 However, to the extent the Court considers the statement for purposes of evaluating the hearsay for
25 purposes of the admissibility of a co-conspirator's statement, whether it can properly be considered self-
26 inculpatory requires some independent corroborating evidence. It has long been established that an
27 admission of a party requires some independent corroborating evidence in order to serve as the basis for
28

1  a conviction. See Opper v. United States, 348 U.S. 84, 89, 75 S.Ct. 158, 162, 99 L.Ed. 101 (1954);
2  Warszower v. United States, 312 U.S. 342, 345 n. 2, 61 S.Ct. 603, 606 n. 2, 85 L.Ed. 876 (1941). There
3  is no such corroborating evidence here.

4  Thus, this purported statement by "Pooh," as the declarant who is unavailable, does not constitute
5  a statement against pecuniary interest pursuant to Rule of Evidence 804(b)(3) because it is far from clear
6  that the statement is contrary to her interests.  there is no corroborating circumstances clearly indicating
7  the trustworthiness of the statement.[3]  In Williamson v. United States, 512 U.S. 594, 600-01 (1994), the
8  Supreme Court explained that Rule 804(b)(3) "does not allow admission of non-self-inculpatory
9  statements, even if they are made within a broader narrative that is generally self-inculpatory." All the
10 Government has to corroborate the statement is Seaton.

11 To the extent the statement is exculpatory to Blaylock, it remains untrustworthy for the obvious
12 reason that "Pooh" is unavailable and not subject to evaluation by the jury nor subject to cross-
13 examination.  Indeed, the source of the double-hearsay is from Seaton, a cooperating witness being
14 provided favorable treatment by the Government for her testimony.  Further, the fact that the
15 Government has identified a proffer of testimony through Seaton that would be extremely misleading –
16 as amply demonstrated above regarding Seaton's unfounded and false "belief" of "Tuesday's" age –
17 renders the statement particularly untrustworthy.

18 In United States v. Boone, 229 F.3d 1231 (9th Cir.2000), *cert. denied,* 532 U.S. 1013, 121 S.Ct.
19 1747, 149 L.Ed.2d 669 (2001), an accomplice confided to his girlfriend that he and Boone had together
20 committed an armed robbery. The girlfriend surreptitiously tape-recorded the conversation for the police.
21 The court held the admission of the nontestifying accomplice's statement under the statement against
22 penal interest exception to the hearsay rule did not violate Boone's Confrontation Clause rights. Boone,
23 229 F.3d at 1234.  Looking at the circumstances as the accomplice perceived them, the court found the
24 circumstances surrounding the statement made it inherently trustworthy. Id.

25 The same cannot be said here.  There is no tape recorded statement.  The Government will not

---

[3]  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. FRE 804(b)(3)

produce "Pooh" for cross-examination and her identity and background is unknown. Thus, this Court cannot adequately consider the circumstances under which the purported statement was made to determine whether it possessed particularized guarantees of trustworthiness. See Padilla v. Terhune, 309 F.3d 614, 620 (9th Cir. 2002). Moreover, the corroborating source, Seaton, is inherently untrustworthy given her status as a cooperating witness and where there exists a strong incentive for her to shift blame. Allowing the Government to elicit the statement by Seaton would violate defendant's Confrontation Clause rights.

Finally, the second part of the statement, *i.e.,* what "Pooh" told Seaton about what Blaylock purportedly told her, is offered to prove the truth of the matter stated and is also hearsay without any identifiable exception. Thus, assuming, *arguendo,* the Government could overcome the hearsay objection to the first part of the statement, there does not appear to be an exception to the second part of the statement.

    **c.    The Government Has Failed to Identify Any Co-Conspirator Statements Establishing the Existence of a Conspiracy to Engage in Child Sex Trafficking "V.S."**

In its Additional Response to Defendant's Motion to Exclude Co-conspirator's Statements, the Government contends that it can prove that "in February of 2007, the defendant recruited a 17-year old female, V.S., with full knowledge that she was a minor to act as a prostitute." As mentioned above, it is unclear whether the Government is referring to Blaylock or Seaton as "the defendant." In the FBI 302 produced in discovery, Seaton is the person engaged in recruiting "V.S." Thus, it would appear that the Government is referring to Seaton as the defendant in this context.

Notwithstanding, the Government fails to identify any statement by Seaton as a co-conspirator in its submission with regard to sex trafficking "V.S." Nevertheless, the blanket statement that Seaton recruited a 17-year old female, V.S., with full knowledge that she was a minor to act as a prostitute fails to show (1) an agreement to accomplish an illegal objective, (2) one or more overt acts in furtherance of the illegal objective, and (3) the required intent to carry out the substantive offense as required by Ninth Circuit authority.

    **2.    The Government's Submissions Do Not Prove Defendant Blaylock's Connection to the Conspiracy.**

Because the Government has failed to identify the actual statements it intends to offer through Seaton, it cannot establish Blaylock's knowing participation in a conspiracy. As demonstrated above, the defense can prove one of the purported "minors" ("Tuesday") was not a minor at all according to Seaton herself. The unreliability of the evidence establishing "Pooh" was a minor or that Blaylock knew she was a minor counts against establishing his knowing participation. The Government has yet to identify any statements concerning "V.S." to establish knowing participation. "Knowledge of the objective of the conspiracy" is material to a conspiracy conviction. Schmidt, 947 F.2d at 367.

"[M]ere association with members of a conspiracy, the existence of and opportunity to join the conspiracy, or simple knowledge, approval of, or acquiescence in the objective or purpose of the conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator." Melchor-Lopez, 627 F.2d at 890. Furthermore, family ties or other close associations are not enough to establish a conspiracy. United States v. Castaneda, 9 F.3d 761 (9th Cir. 1993). Thus, the Government has failed to establish knowing participation by defendant Blaylock.

**3. The Government's Submissions Do Not Prove a "Concert of Action" Between Seaton and Blaylock.**

The statements must demonstrate a "concert of action" between the defendant and the declarant. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988). The statements must be made, (1) during the course of the conspiracy, and (2) in furtherance of the conspiracy. United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir. 1993). Because the Government fails to establish the existence of an agreement to engage in sex trafficking of minors, it certainly has failed to establish a "concert of action" between Seaton and Blaylock. None of the statements the defense has put forth in the discovery it has received demonstrates statements that further the common goals of the conspiracy as is required. United States v. Yarbrough, 852 F.2d 1522, 1535 (9th Cir. 1988). None of these statements were made to induce enlistment, further participation, prompt further action, allay fears or keep co-conspirators abreast of an ongoing conspiracy's activities as is required. Arias-Villanueva, 988 F.2d at 1502 (citations omitted).

### III.    CONCLUSION

Based upon the foregoing, defendant respectfully requests this honorable Court preclude the

---

Government from soliciting false testimony from cooperating witness Tawakoni Seaton regarding purported co-conspirator statements regarding "Tuesday." Furthermore, defendant submits that anticipated statements concerning "Pooh" are not co-conspirator statements at all and are inherently unreliable even as statements to evaluate to determine the existence of a conspiracy. Finally, the Government has failed to identify any co-conspirator statements concerning "V.S." that it intends to solicit from Seaton at trial and, given the infirmities recounted herein concerning the other possible statements, the defense respectfully submits that the Court should require the Government to make an appropriate offer of proof before it attempt to solicit any other statements from Seaton regarding a conspiracy to engage V.S. in sex trafficking.

DATED: September 9, 2008              Respectfully submitted,


                              By     /s/ Michael Stepanian
                                     Michael Stepanian
                                     Randy Sue Pollock
                                     Attorneys for Defendant
                                     Shannon Blaylock

**DECLARATION OF COUNSEL**

I, Michael Stepanian, declares as follows:

1. I am an attorney at law duly licensed to practice before all of the courts of this state and this district and I am appointed counsel of record to defendant Shannon Blaylock in this matter. Further, I have personal knowledge of the matters set forth herein and could and would testify thereto if called upon to do so in any court of law.

2. I was recently provided the Federal Bureau of Investigation reports ("302") from the Government concerning co-defendant Tawakoni Seaton in discovery in this case. In the report dated March 24, 2008, which recounts an interview with Ms. Seaton by Special Agents Matthew Beaupain and John Kim, Ms. Seaton states that she questioned the age of a girl with the alias "Tuesday." The Special Agents document the following: "On one occasion SEATON went to drop TUESDAY off at TUESDAY's residence and went inside and met with TUESDAY's family. SEATON verified with TUESDAY's sister that TUESDAY was not a minor." True and correct copies of the relevant pages of the FBI 302 report dated March 24, 2008, by Special Agents Matthew Beaupain and John Kim are attached hereto.

3. It would be prosecutorial misconduct if the Court allows the Government to solicit false testimony from its cooperating witness, Tawakoni Seaton. There cannot be a good faith basis to Ms. Seaton's "belief" that the girl who went by the name of "Tuesday" was a minor given her admission to the Government that she was informed by "Tuesday's sister" that she was **not** a minor.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct of my own personal knowledge. Executed at San Francisco, California, on September 8, 2008.

                    /s/ Michael Stepanian
                    Michael Stepanian

FD-302a (Rev. 10-6-95)

31E-SF-141356

Continuation of FD-302 of  **TAWAKONI SEATON (Proffer)**  , On 3/24/2008 , Page 9

pimp. SEATON believed that BLAYLOCK made up his mind and had everything planned out already.

CYNTHIA LNU had left them, and it was back to only BLAYLOCK and SEATON. BLAYLOCK had blamed SEATON for CYNTHIA LNU for leaving. SEATON admitted that she did not like, or treat CYNTHIA LNU very well.

SEATON received a call from DANNY LNU, about another girl, JENNIFER LNU, her street name was GINGER and BRITNEY. SEATON said that JENNIFER LNU was "very ruff around the edges." BLAYLOCK and SEATON met JENNIFER LNU and had her start working for them.

At the time there were two other girls, TAMIKA LNU (aka, PAGE) and TUESDAY, a street name, who were working with them as well. SEATON at first questioned TUESDAY's age and believed that she was underage. SEATON discussed this matter with BLAYLOCK. BLAYLOCK again started blaming SEATON for not liking the other girls and that she was just jealous. BLAYLOCK later asked TUESDAY to bring her identification card but PAGE had told SEATON that it was fake. SEATON believed that BLAYLOCK did not care about the age of the girls.

On one occasion, SEATON went to drop TUESDAY off at TUESDAY's residence and went inside and met with TUESDAY's family. SEATON verified with TUESDAY's sister that TUESDAY was not a minor.

On January of 2006, MARIE LNU (aka, NIKKI), a white girl, called SEATON and asked SEATON for help. NIKKI was leaving her pimp and wanted to start working for SEATON. NIKKI got SEATON's telephone from LANNA LNU, who had once helped SEATON make fake pay slip's so that she could get a mortgage to buy a house. SEATON did not want her kids involved so she sent them to her mother's house in Minnesota. By this time their Internet website, BLAZING EXOTICS, was up and running.

TASHA LNU flew from Los Angeles, to Dallas, to start working with them. TASHA LNU would make comments to SEATON that BLAYLOCK was not treating them right. SEATON and TASHA LNU would get in arguments about BLAYLOCK. BLAYLOCK would only yell at the other girls but had not gotten physical with them yet. TASHA LNU, SEATON, JENNIFIER LNU and BLAYLOCK were all living at SEATON's house together. PAGE and TUESDAY had a place of their own, but would sometimes also stay at SEATON's house.